PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL JAY BOWMAN, ) | |
| ) | CASE NO. 5:16CV162 |
| Petitioner, ) | (5:13CR426) |
| ) | |
| v. ) | |
| ) | JUDGE BENITA Y. PEARSON |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Respondent. ) | **ORDER** [Resolving ECF Nos. 37, 39, 42] |

Pending before the Court is Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 37),[1] Expedited Motion for Release pending habeas review (ECF No. 39) and Expedited Motion for Summary Judgment (ECF No. 42). The Government responded to the Motions to Vacate and for Release (ECF No. 40) and Petitioner replied (ECF No. 41).

For the following reason, the Court denies Petitioner's Motions.

## I. Background

This case stems from two unrelated child pornography investigations. First, Internet service provider United Online reported a Cyber Tip to the National Center for Missing and Exploited Children. ECF No. 40 at PageID #: 321. United Online noted that the email address "joyeme06@gmail.com" sent an email containing a zip file of twenty images depicting child pornography to a United Online customer. *Id.* Through a series of subpoenas to United Online,

---

[1] The Court granted Petitioner's Motion to Amend his Motion to Vacate. ECF Nos. 44, 45. Although nearly ten months have passed since the Court's Order, Petitioner has not filed an amended motion.

(5:16CV162)

Google Inc., and Time Warner Cable, it was determined that the email address was associated with an IP address assigned to Teresa Butner, Petitioner's wife. *Id.* at PageID #: 321–22. Petitioner had access to the email account, as well as a second account, "Dan06@neo.rr.com." *Id.*

In a separate, unrelated investigation, an Australian citizen was arrested by the Queensland Police Service for using his email account to distribute child pornography. *Id.* at PageID #: 322. Queensland Police investigated his email account, finding that he had sent over 600 emails to 111 different email accounts. *Id.* Most of these emails contained child pornography or discussed the users' interest in the subject. *Id.* The investigation led to the discovery of a child pornography cohort exchanging emails between "joey006@lavabit.com" and "jesus083187@yahoo.com" (also referred to as "Jesus Garcia"). *Id.* at PageID #: 322–23. The pair exchanged numerous emails, in which they described their penchants for child pornography and traded various images, videos, and audio files depicting prepubsecent boys and girls in the nude or performing various sex acts. *Id.* at PageID #: 323–26. In several emails, "joey006@lavabit.com" requested that Jesus Garcia email him at "joeye14@gmail.com." *Id.*

The source header associated with the emails sent by joey006@lavabit.com revealed that they were sent from two IP addresses. *Id.* at PageID #: 325. Further investigation revealed that Teresa Butner was the account holder for these IP addresses, as well as a third IP address associated with the account. *Id.* at PageID #: 326.

Armed with this information, Special Agents executed a search warrant at Petitioner's home. *Id.* at 326–27; *see also* ECF No. 40-1 at PageID #: 354–69 (affidavit in support of

(5:16CV162)

application for a search warrant).  Petitioner agreed to speak with the agents.  ECF No. 40 at PageID #: 326.  After being advised that speaking with agents was voluntary, and he was free to leave, Petitioner told agents that he used the email address "Dan06@neo.rr.com," and that he chose the number "06" in his email address as a homage to his favorite football player.  He also noted that he and his wife were the only computer users, but his wife rarely used the computer, and she did not use email.  *Id.*

A review of Petitioner's computer revealed 8,124 image files and 958 video files depicting child pornography.  *Id.* at PageID #: 327.  The files were organized into subcategories based on the age of the children (*e.g.*, Boys 1–5); the people in the videos (*e.g.*, "Boys and Men" or "Girls and Men") and their content (*e.g.*, "R" included videos of rape; "sleep or drugged" included videos of children being molested while drugged or asleep).  *Id.*

Agents also discovered that Petitioner had taken photos of children and wrote first-person accounts of sexual acts with children.  For example, he sent pictures of a seven-year-old male relative in underwear and a bathing suit to a pedophile that was sexually aroused by boys' feet.  *Id.*  In a different email, he described the rape of an eight-year-old boy in great detail, asking the email recipient, "Have you ever fuck [*sic*] a little boy? I have . . . , felt great . . . :)".  *Id.*

Petitioner was charged in a two count indictment on one count of receipt and distribution of visual depictions involving real minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  ECF No. 8.  Petitioner pleaded guilty to the indictment without a plea agreement.  ECF No. 31.  Petitioner  was 62 years old when sentenced.  The Court varied

3

(5:16CV162)

downward from the advisory guidelines range of 210 to 240 months and sentenced Petitioner to a 180-month term of imprisonment on Count 1 and a 120-month term of imprisonment on Count 2, to be served concurrently, followed by a ten-year term of supervised release and a $200 special assessment. Petitioner appealed, arguing that the Court failed to take into consideration Petitioner's life expectancy, as predicted by the Center for Disease Control ("CDC"), and that the Court should have considered the Sentencing Commission's findings concerning child pornography. *United States v. Bowman*, No. 14-3535, slip op. at 3 (6th Cir. May 28, 2015). The Sixth Circuit Court of Appeals affirmed Petitioner's sentence. *Id.*; ECF No. 36.

## II. Standard of Review

Petitioner moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting four grounds for relief. Section 2255 of Title 28, United States Code, provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

In order to prevail upon a Section 2255 motion, the petitioner must allege as a basis for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

4

(5:16CV162)

### III. Discussion

Petitioner moves to vacate his conviction, arguing that he received ineffective assistance of counsel. For the following reasons, the Court finds that Petitioner's arguments are without merit.

Ineffective assistance of counsel may be a proper basis for relief under 28 U.S.C. § 2255, provided that the petitioner can demonstrate counsel's ineffectiveness by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *McQueen v. United States*, 58 F. App'x. 73, 76 (6th Cir. 2003). To establish ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Id*. Next, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id*. "This requires showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

Counsel's performance is deficient when the representation falls below an "objective standard of reasonableness." *Id.* at 688. A petitioner must overcome the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance," and that "the challenged action 'might be considered "sound trial strategy."'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Not all errors by counsel are constitutional violations.

5

(5:16CV162)

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice requirement of *Strickland*, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The failure to satisfy either requirement is fatal to an ineffective assistance of counsel claim. *Id.* at 697.

Petitioner's arguments are addressed in turn.

**A. Search Warrant and Motion to Suppress**

Petitioner argues that "[c]ounsel was *per se* ineffective by failing to file any pre-trial motions under [Fed. R. Crim P.] 12(e)—including a motion to suppress based on the facially invalid search warrant with no affidavit of probable cause." ECF No. 37 at PageID #: 297–99.

Petitioner offers only conclusory statements in support of his argument, and has not demonstrated that the search was unconstitutional. Although Petitioner submits an excerpted version of the search warrant, which omits the warrant's Affidavit of Probable Cause (ECF No. 37-1 at PageID #: 304–08), the Government's submission of the complete warrant demonstrates that there was, in fact, such an affidavit. ECF No. 40-1. Petitioner makes vague, unsupported arguments that the "Agents [executing the search warrant] lied to Bowman, coerced him, and all-but physically forced him to accompany them to their office for interrogation," but admits that they told him he was not under arrest. ECF No. 37 at PageID #: 295. Petitioner notes that courts are limited to the four corners of the search warrant, but does not suggest that the officers

6

(5:16CV162)

exceeded the scope of the warrant. *Id*. Nor is there any evidence that the officers exceeded the scope of the warrant. Furthermore, although Petitioner cites cases in which counsel was found to be ineffective for failing to file a notice of appeal, *id.* at PageID #: 298 (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) and *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002)), these cases are inapplicable, as Petitioner was given the opportunity to appeal, which he took. ECF No. 24.

Petitioner does not provide a legally sound argument as to why the search warrant was invalid, or why his counsel should have filed a motion to suppress. Petitioner complains that his counsel did not file any pretrial motions, but he does not suggest which motions would have been proper. "Counsel [is] not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Tremble v. Burt*, 497 F. App'x 536, 547 n.7 (6th Cir. 2012) (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Therefore, the Court finds that this argument cannot serve as a basis for Petitioner's ineffective assistance of counsel claim.

**B. Plea Negotiations**

Petitioner contends that counsel was "*per se* ineffective by failing to enter into plea negotiations with the United States." ECF No. 37 at PageID #: 300 (citing *Missouri v. Frye*, 566 U.S. 133 (2012)).

Petitioner places a greater burden on *Frye* than a cogent reading of that ruling can bear. Petitioner believes *Frye* requires counsel to engage in plea negotiations. *Frye*'s holding is more limited, requiring defense counsel to communicate formal offers from the prosecution, and accept pleas on favorable terms and conditions to the accused. *Frye*, 566 U.S. at 145.

7

(5:16CV162)

Generally, a criminal defendant has no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (6th Cir. 1977). But even assuming, *arguendo*, that Petitioner's counsel's performance in negotiating the plea agreement was deficient, Petitioner cannot demonstrate that he was prejudiced by counsel's inaction. Although Petitioner argues that had his counsel negotiated with the Government, he would have received a conviction on a lesser charge, or a binding plea agreement within a specific point range, counsel for the Government contends that "[n]othing about [Petitioner's] fact pattern would have warranted the dismissal of count one . . . . In fact, the dismissal of a distribution charge would have been unprecedented for the undersigned Assistant U.S. Attorney or Mr. Sullivan, her Project Safe Childhood counterpart." ECF No. 40 at PageID #: 340. Additionally, the Court is required to accept or reject a binding plea agreement. Petitioner's offer of the possibility of acceptance, without substantiation, is purely speculative.

Accordingly, the Court finds that Petitioner has not demonstrated that his counsel's representation was deficient or prejudicial.

**C. Unknowing and Involuntary Plea**

Petitioner argues that he entered into his plea agreement unknowingly and involuntarily. ECF No. 37 at PageID #: 300. He maintains that his public defender "was a complete joke, and an affront to the American justice system" and that counsel "refused to communicate with [Petitioner] in any way, did absolutely no work for his client—let alone his duty to 'zealously advocate'—and thus [Petitioner] had no idea in the world that any alternative courses of action were open to him." *Id*.

8

(5:16CV162)

During his change of plea hearing, Petitioner told the Court that he expected to plead guilty to the two counts of the Indictment and that he agreed with the United States Attorney's recitation of the charges. ECF No. 31 at PageID #: 191, 194. He then swore under oath that he was pleading guilty because he was guilty, and that he and his counsel had discussed the implications of pleading guilty, including the advisory sentencing guidelines and mandatory minimums. *Id.* at PageID #: 200–11, 217. He also stated that he had not been coerced into accepting the plea agreement. *Id.* at PageID #: 214, 217. The Court also informed Petitioner of his right to go to trial, at which the Government would bear the burden of proof of proving guilt beyond a reasonable doubt, and that he could present evidence in his defense to the Court. *Id.* at PageID #: 199–200. Finally, Petitioner confirmed that his counsel fully informed him of Counts 1 and 2 and any defenses he believed Petitioner had, and that he had been satisfied with counsel's representation. *Id.* at PageID #: 218–19.

The Supreme Court has specified that, in the context of guilty pleas, a petitioner arguing that his counsel was ineffective must show that his counsel's representation fell below an objective standard of reasonableness, and, but for counsel's errors, the petitioner would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985). Petitioner has not demonstrated that counsel's representation was unreasonable. Petitioner offers only conclusory insults aimed at his former counsel in support of his motion. He does not explain why he lied under oath. Furthermore, although he argues he was unaware of his right to go to trial, the Court fully informed him of this right during the plea colloquy.

(5:16CV162)

Given that Petitioner offers no reason for the Court to reconsider his prior sworn statements, the Court finds that this argument is without merit.

### D. Sentencing: Eighth Amendment and National Sentence Disparities

Petitioner argues that his counsel was ineffective for failing to argue that a guidelines sentence for receiving child pornography violates the Eighth Amendment's ban on disproportionately cruel and unusual punishment. ECF No. 37-2 at PageID #: 300–01, 309–15. He further contends that his counsel should have used *Miller v. Alabama*, 567 U.S. 460 (2012) to argue that Petitioner's guidelines range was cruel and unusual punishment. Additionally, he argues that the Court arbitrarily assessed four guideline enhancements. *Id.* at PageID #: 301. He argues that, even though he received a downward variance, his sentence would be 120 months shorter without the enhancements. *Id.* In support of these arguments, he cites the United States Sentencing Commission's 2012 Report, arguing that the Commission found that federal sentencing policy was "overly severe." ECF No. 37-2 at PageID #: 310. Furthermore, Petitioner contends that counsel failed to "research or argue" national sentence disparities. ECF No. 37 at PageID #: 302.

Petitioner cannot satisfy either of *Strickland's* prongs. "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). Courts generally give "substantial deference" to Congress' sentencing policies. *Harmelin v. Michigan*, 501 U.S. 957, 999 (1991) (Kennedy, J., concurring). In fact, many Courts have rejected similar Eighth Amendment challenges, finding that sentences up to fifteen years were appropriate. *See generally United States v. Cobler*, 748 F.3d 570 (4th Cir.

(5:16CV162)

2014) (rejecting Eighth Amendment challenge to child pornography sentence to ten-year sentence); *United States v. Weis*, 487 F.3d 1148 (8th Cir. 2007) (fifteen-year mandatory sentence not cruel and unusual); *United Staets v. Meiners*, 485 F.3d 1211 (9th Cir. 2007) (fifteen-year sentence for advertising and distributing child pornography did not violate the Eighth Amendment); *United States v. McIntosh*, 414 F. App'x 840 (6th Cir. 2011) (ten-year sentence for recidivist possessing of thirty-five images of child pornography was not cruel and unusual). Petitioner has not presented a case in which a court found the sentence of a child pornography distributor to violate the Eighth Amendment. Accordingly, the Court finds that it was not unreasonable for Petitioner's counsel not to raise this argument, given that it has been poorly received in other courts, and that Petitioner has not demonstrated that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Moreover, Petitioner's counsel argued against the 18 U.S.C. § 3553(a) sentencing factors in his sentencing memorandum, and argued against unwarranted sentencing disparity as well. ECF No. 20 at PageID #: 97–106; ECF No. 32 at PageID #: 257–59. The Court did not find these arguments to be convincing. ECF No. 32 at PageID #: 265–66.

For these reasons, the Court finds that Petitioner has not demonstrated that counsel's representation was deficient or prejudicial.

**E. Sentencing: Substantive Reasonableness**

Petitioner agues that counsel was ineffective for choosing not to argue substantive reasonableness. ECF No. 37 at PageID #: 301. He contends that his sentence is greater than

11

(5:16CV162)

necessary to achieve the sentencing goals set forth in 18 U.S.C. ¶ 3553(a). Given the substantial deference afforded to district courts in imposing a sentence, it would not have been reasonable for Petitioner's counsel to make this argument. *Gall v. United States*, 552 U.S. 38, 51 (2007) (substantive component of district court's sentence reviewed under abuse-of-discretion standard). Therefore, the Court finds that this argument is without merit.

### D. Sentencing: First Amendment

Petitioner contends that counsel failed to argue that Petitioner's email, detailing the rape of an eight-year-old boy, was protected by the First Amendment. ECF No. 37 at PageID #: 301–02. Citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002), Petitioner contends that he is being criminalized for a "thought crime." *Id.* at PageID #: 302.

Petitioner has not demonstrated that counsel acted deficiently by not presenting this argument. Even assuming that Petitioner's email is protected speech, and not within the unprotected category of obscenity, the cases Petitioner cites concern the criminalization of protected speech, not the Court's ability to consider such speech at sentencing. Title 18 of the United States Code, Section 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant. Given that the email was one of many he had sent describing his desire to have and view intercourse with children, the first-person narrative quality of the email, and the admission, at the end of the email, that he had raped a child, the information was relevant for the Court to consider in sentencing. Accordingly, counsel was not acting unreasonably when it chose not to raise this argument. Because

12

(5:16CV162)

Petitioner has not demonstrated that counsel was deficient, the Court does not need to reach the issue of prejudice.

### F. Sentencing: Life Expectancy

Petitioner argues that his counsel failed to argue his age and life expectancy at sentencing. ECF No. 37 at PageID #: 302–03. He contends that his sentence is "roughly three years beyond the number of years that the CDC . . . predicted he would live." *Id.* at PageID #: 303. Counsel made arguments relating to Petitioner's lifespan, filing a sentencing memorandum detailing Petitioner's age and life history. ECF No. 20. Furthermore, counsel argued at sentencing that a minimum guidelines sentence would effectively result in a life sentence, and requested a sentence closer to 60 months. ECF No. 32 at PageID #: 259.

Counsel's choice to exclude reference to the CDC requirements is not "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. As the Sixth Circuit noted on Petitioner's appeal:

> [T]he CDC's calculated life expectancy is wholly irrelevant . . . . A district court has no obligation to ensure a prisoner is released before he dies. Nor is a sentence rendered unreasonable merely because it would keep a 62-year-old white male prisoner incarcerated beyond his 74th birthday.

*United States v. Bowman*, No. 14-3535, slip op. at 3 (6th Cir. May 28, 2015). Accordingly, the Court finds that Petitioner's counsel was not deficient, and need not reach the question of prejudice.

### IV. Conclusion

For the foregoing reasons, the Court finds that Petitioner's arguments are without merit, and denies the Motion to Vacate. Furthermore, the Court denies Petitioner's Expedited Motion

13

(5:16CV162)

for Release and Expedited Motion for Summary Judgment as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      IT IS SO ORDERED.

|  August 21, 2017  |  */s/ Benita Y. Pearson*  |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |